[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 58.]

THE STATE EX REL. KING, APPELLANT, *v*. TRIMBLE, ADMR., ET AL.,
APPELLEES.

[Cite as *State ex rel. King v. Trimble*, 1996-Ohio-190.]

*Workers' compensation—Denial of permanent total disability compensation by
Industrial Commission not an abuse of discretion when commission's
explanation of nonmedical/vocational factors complies with Stephenson
and Noll.*

(No. 94-2150—Submitted September 10, 1996—Decided November 6, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD09-1234.

_____

{¶ 1} Appellant, Estle King, seeks a writ of a mandamus to vacate appellee
Industrial Commission of Ohio's denial of his claim for permanent total disability
compensation ("PTD") and to award him this relief pursuant to *State ex rel. Gay v.
Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666.

{¶ 2} King sustained industrial injuries in 1967 and 1978 while employed
by Assured Drywall, Inc.  King's claim for the 1967 injury was recognized for the
condition "right forefinger severed."  His claim for the 1987 injury was recognized
for "[i]njury head, back, neck, ribs and ear," with an additional allowance in 1988
for "herniated disc L5-S1."

{¶ 3} In April 1990, King applied for PTD based on this March 1990 report
of Alan S. Kohlhass, M.D, his attending physician:

"As a result of claim No. 67-13387 [the severed finger injury] and claim
No. 78-2830 [the head, etc., injury], it is my opinion that * * * King is permanently
and totally disabled under Ohio law.

"I do not think he will ever be in a position in which he will be able to return to a laboring type of job which is based predominantly on claim No. 78-2830, which includes a herniated disc at L5-S1.

"Due to the loss of sight in his left eye and his seventh grade education and his age of 51 years, at this point, [King] is untrainable for work in a non-laboring type occupation."

{¶ 4} Prior to Dr. Kohlhaas's report, King was examined in November 1989 by Wayne C. Amendt, M.D., an orthopedic surgeon and commission specialist. Dr. Amendt reported, in part:

"Diagnosis:

"1). Status post amputation, right index finger. 2). Low back pain with intermittent radiculopathy ( herniated disc L5-S1) status post head injury, back injury, neck injury, rib injury, and ear injury.

"Opinion:

"The industrial injuries do prevent [King] from returning to his former position of employment. His condition is permanent and he has reached maximum medical improvement. The industrial injury does not prevent [King] from engaging in sustained remunerative employment of a light lifting activity level defined as lifting 20 pounds maximum with frequent lifting and/or carrying of objects weighing up to 10 pounds. He should avoid jobs that involve working at heights as well as jobs that involve prolonged standing, bending or stooping. His impairment * * * is rated as follows: Amputation right index finger 14% whole person impairment; low back pain (herniated disc L5-S1) 25% whole person impairmment; neck pain 10% whole person impairment for a combined rating of 42% whole person.

"Rehabilitation Potential:

"Considering the percentage of impairment[,] [King] is medically stable to participate in rehab services at a light lifting activity level defined above. No

2

medical barriers need be resolved. No new diagnostic tests are required. Programs to assist [King] to return to gainful employment would be vocational evaluation and pain and stress management. If these programs are implemented[,] light duty work only would be appropriate for him based on the examination today."

{¶ 5} On August 20, 1991, the commission heard King's claim and denied PTD, finding that he was capable of sustained remunerative employment. King challenged the order by requesting a writ of mandamus in the Court of Appeals for Franklin County, case No. 92AP-09. A referee in that case recommended that the writ be granted to compel the commission's consideration and explanation of nonmedical/vocational factors pursuant to *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946, and *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. The court of appeals apparently adopted this recommendation and issued the writ because, on June 28, 1993, the commission issued a new order.

{¶ 6} The commission's new order explained its reasons for denying King PTD, with respect to the recognized condition "injury head, back, neck, ribs and ear, herniated disc L5-S1," as follows:

"The reports of Doctor(s) Kohlhass and Amendt were reviewed and evaluated. The order is based particularly upon the reports of Doctor(s) Amendt, evidence in the file and/or evidence adduced at the hearing.

"[King] is 53 years old and has a seventh grade education. He has worked as a truck driver and a church bell installer, but primarily as a drywall hanger. On 6/24/67, [King] severed his right forefinger while loading steel beams on a truck. [King] is left hand dominant. With only a couple of exceptions, once [King] recovered from his initial injury, it has not [a]ffected his ability to work as a drywaller. On 2/21/78, [King] fell six feet from a scaffold and required three months of convalescence before returning to work as a truck driver (during the 'off' season) and later to his former job as a drywaller. He kept working in this capacity

until some time in 1987. He has been treated conservatively during the course of this claim. On 11/27/89, [King] was examined by Commission orthopedic specialist Wayne C. Amendt, M.D., who stated that [King] was capable of performing work of a light lifting capacity, which includes lifting no more than 20 pounds at a time and frequent lifting of items weighing up to ten pounds. Dr. Amendt added that [King] should not work at jobs which are performed at heights or require prolonged standing, bending or stooping. [Dr. Amendt] concluded that [King] was medically stable to participate in rehabilitation services.

"It is found that at the age of 53, [King] has a potential of at least ten years in the work force remaining, thus his age is not a barrier to future employment. Even though he has only a seventh grade education, [King] has had a variety of jobs (installer of church bells and clocks, truck driver, and drywaller), which indicated that he has an ability to be re-trained. It is noted that [King] is blind in his left eye, yet this is found not to be a barrier to future employment as evidenced by the fact that he has had a full and varied employment history in spite of such disability.

"[King] has alleged that due to his increase of pain caused by his back and neck conditions, he had to quit working in 1987. Although his 1978 claim was additionally allowed for herniated disc at L5-S1 in 1988, it is noted that [King] has only had conservative treatment for it during the past five years, thus indicating that it has stabilized and can be managed fairly easily on a day to day [basis] with medication.

"In spite of the fact that the Rehabilitation Division found on 12/31/90 [King] was not a viable candidate for their services, it is found that according to Dr. Amendt, [King] retains the physical ability and is medically stable enough to perform light duty work which is not done at heights. It, therefore, is found that [King's] industrial injuries do not prevent him from performing some form of

4

sustained remunerative employment, in spite of his other disability employment [*sic*], in spite of his other disability factors previously discussed."

{¶ 7} In September 1993, King petitioned for another writ of mandamus in the Franklin County Court of Appeals, arguing that the commission abused its discretion in denying PTD. In this second action, case No. 93APD09-1234, a referee again recommended that the writ be granted to vacate the commission's order and to compel the commission's sufficient explanation for denying PTD, pursuant to *Stephenson* and *Noll*.[1] This time, however, the court of appeals sustained objections to the referee's report, holding that the commission's explanation of nonmedical/vocational factors was sufficient and, therefore, not an abuse of discretion.

{¶ 8} The cause is now before this court upon an appeal as of right.

_____

*Kondritzer, Gold, Frank & Crowley, Co., L.P.A.* and *Lane N. Cohen*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Yoland V. Vorys*, Assistant Attorney General, for appellee Industrial Commission.

_____

*Per Curiam.*

{¶ 9} For the reasons that follow, we affirm the court of appeals' conclusion that the commission complied with *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946, and *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

{¶ 10} Where medical evidence establishes only a claimant's permanent partial impairment due to industrial injury, the commission must deny PTD unless

1. The parties confuse the first referee report, issued on January 11, 1993 in case No. 92AP-09, with the second referee report, issued on May 6, 1994 in case No. 93APD09-1234.

the claimant's age, work experience, education, or other relevant characteristics, commonly referred to as the *Stephenson* factors, foreclose sustained remunerative employment. *State ex rel. Hopkins v. Indus. Comm.* (1994), 70 Ohio St.3d 36, 39-40, 635 N.E.2d 1257, 1259; *State ex rel. Lawrence v. Am. Lubricants Co* (1988), 40 Ohio St.3d 321, 322, 533 N.E.2d 344, 345-346; *State ex rel. Hartung v. Columbus* (1990), 53 Ohio St.3d 257, 258, 560 N.E.2d 196, 198. And, for all its determinations, *Noll* requires the commission "to prepare orders that are 'fact-specific and which contain reasons explaining its decisions. * * * Such order[s] must specifically state what evidence has been relied upon to reach its conclusion and, most important, briefly explain the basis of its decision[s].'" *State ex rel. Pass v. C.S.T. Extraction* Co. (1996), 74 Ohio St.3d 373, 375, 658 N.E.2d 1055, 1057, quoting *Noll*, 57 Ohio St.3d at 206, 567 N.E.2d at 249. The commission's failure to specify and explain the impact of the *Stephenson* factors, in accordance with *Noll*, is an abuse of discretion, and a writ of mandamus will issue to correct the abuse. *State ex rel. Ranomer v. Indus. Comm.* (1994), 71 Ohio St.3d 134, 137, 642 N.E.2d 373, 376.

{¶ 11} Dr. Amendt estimated King's impairment at forty-two percent. In considering the *Stephenson* factors, the commission found that King's low level of education reduced his employment prospects, but that his age and varied work history suggested his potential for retraining and that his severed forefinger and blindness were not impediments to employment based on his work record. The commission also found, based on Dr. Amendt's report, that King was physically capable of performing light duty jobs not performed at heights. This explanation is explicit enough to allow meaningful judicial review, which was the purpose behind *Noll. Noll,* 57 Ohio St.3d at 206, 567 N.E.2d at 249.

{¶ 12} King, however, argues that these conclusions are insufficient under *Noll* because they do not account for rehabilitation reports suggesting his inability to perform heavy labor, his lack of skills transferable to sedentary employment, and

his inability to be retrained. King also seems to argue that in determining a claimant's capacity for sustained remunerative employment, the commission can consider only "nonmedical" evidence from vocational experts; it cannot deduce employability from evidence prepared by a medical expert. King's arguments, which are directed more to the weight of evidence than to the order's compliance with *Noll* as to form and content, see *State ex rel. Ellis v. McGraw Edison Co* (1993), 66 Ohio St.3d 92, 94, 609 N.E.2d 164, 165, lack merit.

{¶ 13} Various reports completed by staff at the J. Leonard Camera Industrial Rehabilitation Center are evidence that King's allowed condition, together with his other physical and vocational characteristics, significantly impede his remployment even in a sedentary capacity. The reports further suggest that his prospects for rehabilitation were poor. The commission, however, credited Dr. Amendt's contrary assessment to the effect that King was presently capable of light lifting and could benefit from rehabilitation programs for pain and stress management. It also drew its own conclusions from King's age and work experience as a truck driver, church bell installer, and drywaller.

{¶ 14} The commission is the exclusive evaluator of disability and evidentiary weight. *Ellis, supra*, 66 Ohio St.3d at 94, 609 N.E.2d at 165. It is the commission's perogative to interpret evidence and draw reasonable inferences. *State ex rel. West v. Indus. Comm*. (1996), 74 Ohio St.3d 354, 356, 658 N.E.2d 780, 782. Moreover, the commission was not bound to accept the vocational reports of the rehabilitation center staff. Rather, "[s]pecialized vocational or rehabilitation reports are not accorded greater weight than other evidence." *Ellis, supra,* 66 Ohio St.3d at 94, 609 N.E.2d at 166.

{¶ 15} The commission exercised its authority here by choosing between the competing assessments of King's physical capacity and inferring from Dr. Amendt's report, King's relative youth, and his assorted work experience that he was not foreclosed from all employment. The facts underlying this conclusion were

uncontested. Thus, "some evidence" exists for the commission's decision and it does not manifest an abuse of discretion. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936; *West, supra*, 74 Ohio St.3d at 356, 658 N.E.2d at 782.

{¶ 16} *State ex rel. Haddix v. Indus. Comm.* (1994), 70 Ohio St.3d 59, 636 N.E.2d 323, does not persuade us to hold otherwise. Under *Haddix, Noll* compliance requires that the commission specifically articulate the basis for its inferences about employment potential, which the commission did not do here with respect to its assessment of King's "variety of jobs." There, we granted mandamus to vacate the commission's denial of PTD because the commission had cited only the "varied vocational background" of a sixty-year-old claimant who had an eighth grade education as some evidence that the claimant could return to the workforce notwithstanding his sixty-five percent impairment. *Id*. at 60, 636 N.E.2d at 323.

{¶ 17} In *Haddix*, however, the claimant's work experience was the only *Stephenson* factor that justified the denial of PTD; here, the commission also relied on King's relative youth in combination with his ability to perform light duty work. Thus, at least one *Stephenson* factor, age, continues to represent some evidence in support of the commission's order. The evidence is not particularly compelling to us, but we have often said that we will not substitute our judgment for the commission's. *State ex rel. Moss v. Indus. Comm.* (1996), 75 Ohio St.3d 414, 417, 622 N.E. 2d 364, 366.

{¶ 18} Accordingly, we find that the commission's decision was written in compliance with *Stephenson* and *Noll* and based on "some evidence." The court of appeals' judgment, therefore, is affirmed.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and Stratton, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

January Term, 1996

_____